UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEHAN ABDUR-RAHEEM,

                Plaintiff,

      -v-

**ORDER**

07-CV-6247L

DONALD SELSKY, et al.,

                Defendants.

---

On March 13, 2008, Plaintiff Jehan Abdur-Raheem, through court-appointed counsel, filed an amended complaint pursuant to 42 U.S.C. § 1983, alleging various constitutional violations in connection with events that occurred from 2005 to 2007, while plaintiff was confined at Elmira Correctional Facility, in the custody of the New York State Department of Correctional Services ("DOCS"). At the time of the relevant events, Defendants Selsky, Burge, Wenderlich, Whitmore, and Powers were DOCS employees.

Following the filing of the amended complaint ("Am. Compl.") *see* Dkt. #22 , Defendants filed a motion to dismiss pursuant to 12(b)(1) and 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. #31. In an Order dated February 6, 2009, this Court denied the motion with respect to Defendants Burge, Whitmore, Wenderlich, and Powers, and granted the motion with respect to Defendant Selsky due to lack of personal involvement. *See* Dkt. #36. The remaining defendants now move to dismiss the claims against them pursuant to 12(b)(6) of the Federal Rules of Civil Procedure. *See* Dkt. #42.

## BACKGROUND

Plaintiff alleges the following facts, which are accepted as true for the purposes of this Decision and Order.

On November 22, 2005 Plaintiff filed a grievance regarding an "insulting" and "negative" letter that was addressed to Plaintiff by a Muslim chaplain, and requested that the letter be removed from his institutional file. Am. Compl., ¶ 20, Ex. J. The superintendent responded that the letter was not part of Plaintiff's file. *Id.*

On December 3, 2005, Defendant Whitmore submitted a recommendation that Plaintiff be administratively segregated for security reasons ("Recommendation"). Am. Compl., ¶ 6, Ex. B. The Recommendation was based in part on alleged observations by defendant Powers. Am. Compl. ¶ 6. Following issuance of the Recommendation, Plaintiff was placed in the Special Housing Unit ("SHU") pending a hearing on whether to place him in administrative segregation. Am. Compl. ¶ 1.

According to Plaintiff's allegations and the records attached to the complaint, a copy of the Recommendation was delivered to cell location SHU-9 on December 6, 2005. Am. Compl. ¶ 6, Ex. B. Plaintiff alleges that at that time, and at all times thereafter, he was housed in SHU-37, and that he therefore did not receive a copy of the Recommendation. Am. Compl. ¶¶ 16-17.

On December 8, Plaintiff was informed by Defendant Wenderlich that he was to appear at a hearing that day, and that if Plaintiff did not attend, it would be considered a refusal. Am. Compl. ¶ 2. Plaintiff declined to attend, *see* Am. Compl. Exs. A, K, and Defendant Wenderlich conducted the hearing in Plaintiff's absence between December 8, 2005 and December 14, 2005. Following the hearing, Wenderlich accepted Whitmore's recommendation that Plaintiff be placed in administrative segregation. Am. Compl. ¶ 2, Ex. A & B.

On December 15, 2005, Plaintiff received copies of the Recommendation and Wenderlich's hearing determination. Am. Compl. ¶ 4, Ex. A. The hearing determination stated that Plaintiff had "become influential enough to incite other Muslim inmates to react sometimes in a negative way" and that "it is in the best interest of this facility's safety and security to approve this recommendation." *Id.*

Plaintiff filed a formal grievance requesting an investigation concerning the Recommendation and to be released from SHU, which was denied by the Inmate Grievance Resolution Committee ("IGRC") on January 5, 2006. Am. Compl., Ex. L. Plaintiff then appealed to Defendant Burge, who denied the appeal, noting that "grievant declined numerous invitations to attend the Ad-Seg hearing where he had every right to challenge his confinement or address his concerns," and that "Ad-Seg hearing was properly conducted and recommendation eventually approved." *Id.*

On January 5, 2006, Plaintiff filed an administrative appeal to Director Donald Selsky,[1] alleging that the Administrative Segregation Recommendation and subsequent Hearing Determination were based on false information. Am. Compl. ¶ 18, Ex. H. The Hearing Determination was affirmed on February 13, 2006. Am. Compl. ¶ 19, Ex. I.

Plaintiff then wrote to Defendant Burge, on or about March 13, 2006, requesting that Burge reverse the decision to place Plaintiff in administrative segregation. Burge responded on March 16, 2006, stating that "the decision to place you in Ad. Seg. status was based upon information received from both staff and inmates," and declined to reverse the determination. Am. Compl., Ex. K.

In total, Plaintiff was housed in SHU for over 1000 days in connection with these events.[2] *See* Dkt. #48, p. 5).

---

[1] Plaintiff's claims against Selsky were dismissed by the Court on February 6, 2009. *See* Dkt. #36.

[2] According to the DOCS Lookup Service, http://nysdocslookup.docs.state.ny.us, Plaintiff was released from DOCS custody to the Division of Parole on January 12, 2011.

## DISCUSSION

I.   **Motion to Dismiss**

The standards applied to a motion to dismiss under Rule 12(b)(6) are well-established. In deciding a motion brought under that rule, the "court must accept the allegations contained in the complaint as true, and draw all reasonable inferences in favor of the non-movant." *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir. 1994).

Nonetheless, "a plaintiff's obligation ... requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *accord Ashcroft v. Iqbal*, ––U.S. ––, 129 S.Ct. 1937, 1949 (2009). Thus, where a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570. A "plausible" entitlement to relief exists when the allegations in the complaint move the plaintiff's claims across the line separating the "conclusory" from the "factual," and the "factually neutral" from the "factually suggestive." *Id.* at 557, n.5.

II.   **Due Process Claims Against Whitmore and Powers**

    A.   **False Administrative Segregation Recommendation**

The first and second causes of action allege that the actions of Defendants Whitmore and Powers, in falsely preparing an Administrative Segregation Recommendation which resulted in Plaintiff's placement in SHU, denied Plaintiff due process of law in violation of the Fourteenth Amendment. Am. Compl. ¶¶ 58, 61

It is well settled that an inmate has no constitutionally protected right against being falsely accused of conduct which may result in the deprivation of a protected liberty interest, as long as the prisoner is provided with procedural due process. *Freeman v. Rideout*, 808 F.2d 949, 951 (2d Cir.1986).

Likewise, "a prisoner enjoys no constitutional right against being issued an administrative segregation recommendation that turns out to be false." *Cabassa v. Gummerson*, No. 9:01-CV-1039, 2008 WL 4416411, *6, n.23 (N.D.N.Y. Sept. 24, 2008) (citing, *inter alia*, *Ciaprazi v. Goord*, No. Civ.9:02CV00915, 2005 WL 3531464, *13 (N.D.N.Y. Dec. 22, 2005) ("It is well established that in the absence of other aggravating factors, an inmate enjoys no constitutional right against the issuance of a false misbehavior report"); *see also Moore v. Casselberry*, 584 F.Supp.2d 580, 582 (W.D.N.Y.2008) ("There is no basis for a constitutional claim alleging the mere filing of a false report"). "Rather, the only way that false accusations contained in a misbehavior report can rise to the level of a constitutional violation is when there has been more such as 'retaliation against the prisoner for exercising a constitutional right.'" *Cusamano v. Sobek*, 604 F.Supp.2d 416, 471–72 (N.D.N.Y.2009) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir.1997)).

While a prisoner may be able to state a constitutional claim by alleging facts indicating that false charges were brought against him in retaliation for the prisoner's exercise of a constitutionally protected right, such as the filing of grievances, Plaintiff does not sufficiently state a claim of retaliation in his complaint. *See* Point IV, *infra*. Accordingly, Defendants' motion to dismiss these claims is granted.

### III.   Claims Against Wenderlich

#### A.   Insufficient Notice

Plaintiff's third cause of action alleges that Defendant Wenderlich violated his due process rights when he failed to adjourn the hearing after Plaintiff was provided inadequate notice of the hearing. Am. Compl. ¶ 64.

With respect to administrative segregation hearings, the Supreme Court of the United States has held that

> an informal, nonadversary evidentiary review is sufficient both for the decision that an inmate represents a security threat and the decision to

> confine an inmate to administrative segregation pending completion of an investigation into misconduct charges against him. An inmate must merely receive *some* notice of the charges against him and an opportunity to present his views to the prison official charged with deciding whether to transfer him to administrative segregation.

*Hewitt v. Helms*, 459 U.S. 460, 476 (1983) (emphasis added), *overruled on other grounds in part by Sandin v. Conner*, 515 U.S. 472 (1995); *see also Soto v. Walker*, 44 F.3d 169, 172 (2d Cir.1995) (noting that the notice and opportunity to be heard required for an administrative segregation order is not as extensive or formal as that required during the course of a disciplinary hearing). The Court of Appeals for the Second Circuit has explained that the notice required before placement in administrative segregation should be sufficiently specific to inform the inmate of what he is accused of doing so that he can prepare a defense to those charges and not be made to explain away vague charges. *See Taylor v. Rodriguez*, 238 F.3d 188, 192–93 (2d Cir. 2001). Thus, an inmate must have sufficient information so as not to "have to guess what conduct forms the basis for the charges against him." *Id.* at 193.

Defendants concede that there is a question of fact as to whether Plaintiff received the written Recommendation on December 6, 2005. Nonetheless, they contend that Plaintiff received "some" notice when Defendant Wenderlich orally informed Plaintiff of the hearing the day it was scheduled, December 8, 2005. Based on these facts, I find that Plaintiff has sufficiently alleged that he was denied the opportunity to prepare and present a defense to the allegations contained in the Recommendation because he did not receive adequate or timely notice of the charges against him. Defendant's motion to dismiss this claim is therefore denied.

### B.     Conditions of Confinement

Plaintiff's fourth cause of action alleges that Wenderlich's placement of Plaintiff in administrative segregation constituted cruel and unusual punishment in violation of the Eighth Amendment. Am. Compl. ¶ 67.

To establish an Eighth Amendment violation based on prison conditions, a plaintiff must demonstrate "that it is contrary to current standards of decency for anyone to be exposed against his will" to the challenged conditions. *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

An Eighth Amendment claim based on prison conditions must satisfy "both an objective element—that the prison official's transgression was 'sufficiently serious'—and an objective element—that the officials acted, or omitted to act, with a "'sufficiently culpable state of mind,' i.e., with 'deliberate indifference to inmate health or safety.'" *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir.2002) (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). As to the objective element, while the Constitution "does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981), prison inmates may not be denied "the minimal civilized measure of life's necessities." *Id.* at 347. The Supreme Court has held that the Eighth Amendment requires that inmates not be deprived of their "basic human needs— e.g., food, clothing, shelter, medical care, and reasonable safety." *Helling*, 509 U.S. at 32 (internal citation and quotation omitted). "Nor may prison officials expose prisoners to conditions that 'pose an unreasonable risk of serious damage to [their] future health.'" *Phelps*, 308 F.3d at 185 (quoting *Helling*, 509 U.S. at 35). The Eighth Amendment's objective prong requires an inmate "prove that the conditions of his confinement violate contemporary standards of decency." *Id.*

As to the subjective element, the Supreme Court has held that:

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Farmer*, 511 U.S. at 837. The "deliberate indifference" element is equivalent to criminal law's reckless indifference standard. *Id.* at 839–40.

Here, Plaintiff alleges that, at the time of the complaint, he had been treated for severe back problems for a period exceeding ten years, which included various forms of physical therapy and

prescription medication and footwear. Am. Compl. ¶ 42. According to Plaintiff, he received an order from a physician to have a chair with a straight back placed in his cell for support. *Id.* Plaintiff alleges that after his numerous requests for a chair were denied, he filed a grievance with the IGRC. Am. Compl. ¶ 46, Ex.P.  The IGRC was deadlocked, with two representatives agreeing that plaintiff should be given a special chair, while two other representatives disagreed. *Id.* As a result, plaintiff was not given a chair. An appeal taken to Defendant Burge was denied, and on further appeal, the Central Office Review Committee stated that "following review by the facility physician, it was determined that there is no medical necessity for the grievant to have a chair or desk in his SHU cell." *Id.*

Based on the foregoing facts in the complaint, Plaintiff has failed to state a claim upon which relief can be granted. Even assuming that the refusal to provide Plaintiff a chair in his SHU cell was "sufficiently serious" to form the basis of an Eighth Amendment violation, there is no indication that Wenderlich knew of any risk to Plaintiff's health or safety in recommending him for administrative segregation, much less that he disregarded that risk.

Likewise, Plaintiff's complaint that being housed in SHU near unruly mentally ill prisoners was "depressing and traumatic" for him, *see* Am. Compl. ¶¶ 42-55, fails to allege sufficient facts to plausibly state a deliberate indifference claim against Wenderlich.  As stated earlier, the Eighth Amendment's prohibition against cruel and unusual punishments "does not mandate comfortable prisons." *Rhodes*, 452 U.S. at 349 (1981); *Davidson v. Coughlin*, 968 F.Supp. 121, 128 (S.D.N.Y.1997). Rather, conditions of confinement may constitute cruel and unusual punishment only when "they result[ ] in unquestioned and serious deprivations of basic human needs ... [which], alone or in combination, may deprive inmates of a minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347.

Plaintiff does not allege such a deprivation. His Eighth Amendment claims against Wenderlich must therefore be dismissed.

**IV.     Retaliation Claims against Whitmore, Powers, and Wenderlich**

Plaintiff's fifth cause of action alleges that Whitmore, Powers, and Wenderlich are liable for a violation of Plaintiff's First Amendment right to free speech by "reporting, recommending and placing Plaintiff in segregation as a result of Plaintiff filing a grievance on a staff member." Am. Compl. ¶ 70.

It is well-established that prison officials may not retaliate against inmates for exercising their constitutional rights. *See, e.g.*, *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.1995); *Franco v. Kelly*, 854 F.2d 584, 589 (2d Cir.1988). To state a retaliation claim under § 1983, "a plaintiff must show that: (1) his actions were protected by the Constitution or federal law; and (2) the defendant's conduct complained of was in response to that protected activity." *Friedl v. City of New York*, 210 F.3d 79, 85 (2d Cir.2000) (internal quotation and citation omitted). As to the second prong, a prisoner alleging retaliation must show that the protected conduct was "a substantial or motivating factor" behind the alleged retaliatory conduct. *See Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996). Evidence that can lead to an inference of improper motive includes: (1) the temporal proximity of the filing of a grievance and the alleged retaliatory act; (2) the inmate's prior good disciplinary record; (3) vindication at a hearing on the matter; and (4) statements by the defendant regarding his motive for disciplining plaintiff. *See Colon*, 58 F.3d at 872-73.

The only facts alleged by Plaintiff are (1) the one-week period between the filing of the grievance and the Recommendation and (2) Plaintiff's good institutional record. Notwithstanding these facts, I find Plaintiff's allegations insufficient to state a claim of retaliation.

The grievance in question, dated November 22, 2005, requested that an allegedly "insulting" and "negative" letter written by Elmira's Muslim chaplain, Imam El-Hassan, be removed from Plaintiff's institutional file. Plaintiff's grievance sought guidance from the IGRC as to whether "the letter could be

9

deemed offensive" but voiced no other complaints.³ The IGRC recommended that any reference to the letter should be removed from Plaintiff's file, and, following an investigation of the matter, the Superintendent determined that the letter "simply offers suggestions to [Plaintiff] as to how to address issues encountered" and, in any event, the letter was never placed in Plaintiff's institutional file. Am. Compl., Ex. J.

Whitmore's December 5, 2005 Recommendation relied on information from Powers that Plaintiff had "incit[ed] the Muslim community" at Elmira, "influenced Muslims to stay in their cells during Ramadan, and was also suspected to be a catalyst behind the inmate strike in May of [2005]." Am. Compl., Ex. B. As reflected by the complaint, Defendant Powers observed Plaintiff's conduct and reported it; this information formed the basis of Whitmore's Recommendation. Defendant Wenderlich then conducted a hearing on the matter, after which he found that Plaintiff should be placed in Administrative Segregation.

These factual allegations do not plausibly suggest that any of the named defendants knew of Plaintiff's November 22, 2005 grievance regarding Imam El-Hassan. Stated somewhat differently, there is no factual allegation that would plausibly suggest a causal link between Plaintiff's grievance against the chaplain and the subsequent Recommendation. The temporal proximity between those two events does not provide a sufficient causal link, because there is simply no indication that Defendants were aware of the grievance. *See generally Ashcroft v. Iqbal*, 129 S.Ct. at 1949 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.") (citation omitted).

Because his claim is unsupported by facts that show a nexus between the Recommendation and the grievance filed against Imam El-Hassan, I cannot find that Plaintiff has sufficiently alleged a

---

³ The letter from Imam El-Hassan advised Plaintiff on how inmates should "address their concerns to the top administration officials," and cautioned Plaintiff, "I hope this will be my last time to talk to you about this issue." Am. Compl., Ex. J.

retaliation claim. Defendants' motion to dismiss is therefore granted as to Plaintiff's claims of retaliation.

### V.     Claims Against Burge

#### A.     Due Process

The sixth cause of action in the complaint alleges that Defendant Burge violated Plaintiff's due process rights when he refused to overturn Wenderlich's determination that resulted in Plaintiff's placement in administrative segregation. Am. Compl. ¶ 73. Burge has moved to dismiss on the basis of lack of personal involvement.

A plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must allege that the supervisor was personally involved in the alleged constitutional deprivation. *Johnson v. Newburgh Enlarged Sch. Dist.*, 239 F.3d 246, 254 (2d Cir.2001); *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir.2001). That requirement may be satisfied by alleging facts showing that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberated indifference to others' rights by failing to act on information indicated that constitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir.1995); *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir.1986).[4]

---

[4] At least one district court in this Circuit has opined that the holding in *Ashcroft v. Iqbal,* --- U.S. ----, 129 S.Ct. 1937 (May 18, 2009)*,* has substantially limited the *Colon* categories. See *Bellamy v. Mount Vernon Hosp.*, No. 07 Civ. 1801, 2009 W L 1835939, at *6 (S.D.N.Y. June 26, 2009) ("Only the first and part of the third *Colon* categories pass *Iqbal*' s muster .... The other *Colon* categories impose the exact types of supervisory liability that *Iqbal* eliminated.") Even viewed under the broader *Colon* approach, Plaintiff still cannot establish the personal involvement of Burge.

Here, Plaintiff's due process claim concerns Burge's affirmance of the disposition of the administrative segregation hearing determination, pursuant to which Plaintiff was confined to SHU. Typically, such circumstances are insufficient to amount to personal involvement. *See Chavis v. vonHagn*, No. 02-CV-0119, 2009 WL 236060, at *68 (W.D.N.Y. Jan. 30, 2009) ("defendant Wilcox's decisions affirming the hearing officers' determinations and defendant Selsky's decisions affirming or modifying the results of the disciplinary hearings do not, standing alone, establish a federal constitutional violation") (citing *Hameed v. Mann,* 57 F.3d 217, 224 (2d Cir.1995)); *Ramsey v. Goord*, No. 05-CV-47, 2005 WL 2000144, at *6 (W.D.N.Y. Aug. 13, 2005) ("the fact that Commissioner Goord and SHU Director Selsky, as officials in the DOCS 'chain of command,' affirmed defendant Ryerson's determination on appeal is not enough to establish personal involvement of their part").

Burge could, depending on the facts, be liable if the hearing officer violated Plaintiff's due process rights. *See Gilbert v. Selsky*, 867 F.Supp. 159, 166 (S.D.N.Y.1994) ("If a supervisory official learns of a violation through a report or an appeal, but fails to remedy the wrong, that may constitute a sufficient basis for liability."); *McCormack v. Cheers*, 818 F.Supp. 584, 598 (S.D.N.Y.1993) (looking to "whether the hearing itself was conducted in compliance with due process ... to determine whether Selsky was personally involved in the alleged constitutional deprivations"). However, Plaintiff does not allege that Burge knew that Plaintiff did not receive adequate notice of the charges or the hearing. Similarly, the grievance papers attached to the complaint indicate that Burge was indeed unaware of the notice issue. *See* Am. Compl., Ex. K & L. Accordingly, I find that there is no basis for a finding that Burge was personally involved in the alleged violation. Defendant's motion to dismiss the due process claim is granted.

B.    **Deliberate Indifference**

Plaintiff's seventh cause of action alleges that Defendant Burge's failure to provide medically-prescribed medical equipment constitutes deliberate indifference to Plaintiff's serious medical needs in violation of the Eighth Amendment. Am. Compl. ¶ 76.

The Eighth Amendment protects incarcerated individuals from being subjected to cruel and unusual punishment. Such punishment may include prison officials' deliberate indifference to an inmate's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). To make out such a claim, however, an inmate must establish both that he suffered from a "serious medical need," i.e., "'a condition of urgency' that may result in 'degeneration' or 'extreme pain,'" *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir.1998) (quoting *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir.1994)), that the defendant both knew of and disregarded that serious need, *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir.2005), and that in doing so, the defendant had a culpable state of mind and intended wantonly to inflict suffering. *Wilson v. Seiter*, 501 U.S. 294, 299 (1991).

Assuming, *arguendo*, Plaintiff's severe back pain constitutes a "serious medical need" for purposes of the Eighth Amendment, *see, e.g.*, *Mendoza v. McGinnis*, No. 05-CV-1124, 2008 WL 4239760 at *10 & n.16 (N.D.N.Y. Sept. 11, 2008), I cannot find that Plaintiff's deliberate indifference claim survives Defendant's 12(b)(6) motion.

It is true that allegations that prison officials denied or delayed recommended treatment by medical professionals may be sufficient to satisfy the deliberate-indifference standard. *See Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir.1987) ("Prison officials are more than merely negligent if they deliberately defy the express instructions of a prisoner's doctor"); *see also Johnson v. Wright*, 234 F.Supp.2d at 361 ("Prison officials may not 'substitute their judgments for a medical professional's prescription'") (quoting *Zentmyer v. Kendall County*, 220 F.3d 805, 812 (7th Cir.2000)); *Wandell v. Koenigsmann*, No. 99 Civ. 8652, 2000 WL 1036030, at *3 (S.D.N.Y. July 27, 2000) ("Proof of deliberate

13

indifference may be found where a prison official or employee 'intentionally denies or delay[s] access to medical care or intentionally interferes with the treatment once prescribed'") (quoting *Estelle*, 429 U.S. at 104-05)).

While Plaintiff alleges that Burge "denied [Plaintiff's] grievance for lack of merit," and "fail[ed] ... to provide medically prescribed and permitted medical equipment and entitlements," *see* Am. Compl. ¶¶ 49, 76, the attached documents relating to the grievance procedures indicate that an investigation was conducted and that Burge ultimately concluded that there was nothing in the DOCS directives requiring a chair and/or desk to be placed in SHU units. Am. Compl., Ex. P. Assuming Burge had knowledge of Plaintiff's medical condition, Plaintiff fails to allege any facts which would satisfy the subjective component of a deliberate indifference claim, *i.e.*, that Burge had the requisite state of mind to be held liable for deliberate indifference. Defendant's motion to dismiss this claim is therefore granted.

## VI.     Qualified Immunity

Defendants also move to dismiss the claims against them on the ground of qualified immunity. That motion is denied.

"Although a defendant may assert the defense of qualified immunity in a motion to dismiss, the Second Circuit has held that it is very difficult for such a defense to succeed at the pleading stage." *Charles v. New York State DOCS*, No. 07–CV–1274, 2009 WL 890548, at *10 (N.D.N.Y. Mar. 31, 2009) (citing *McKenna v. Wright*, 386 F.3d 432, 436–37 (2d Cir.2004)). "The defense must be based on facts appearing on the face of the complaint." *Id.*, 2009 WL 890548, at * 10 (citing *Benzman v. Whitman*, 523 F.3d 119, 125 (2d Cir.2008)). *See also Bernstein v. City of New York*, No. 06 Civ. 895, 2007 WL 1573910, at *9 (S.D.N.Y.2007) ("[b]ecause the qualified immunity defense necessarily involves a fact-specific inquiry, '[i]t is generally premature to address the defense of qualified immunity in a motion

to dismiss pursuant to [Rule] 12(b)(6)' ") (quoting *Walker v. Mendoza*, No. 00 Civ. 93, 2000 WL 915070, at *7 (E.D.N.Y. June 27, 2000)).

In the case at bar, whether Defendants can successfully assert the defense of qualified immunity depends to a great extent on the facts concerning what actions they took and why they took those actions, in light of the surrounding circumstances. Their motion to dismiss on this ground is therefore denied as premature. *See Rivera v. Fischer*, 655 F.Supp.2d 235, 239–40 (W.D.N.Y. 2009).

### IV.   Leave to Amend

At the end of his memorandum of law, Plaintiff states that "to the extent the Court is inclined to grant any part of Defendants' motion, [Plaintiff] requests an opportunity to replead his Complaint to remedy any pleading deficiencies." *See* Dkt. #48, p.21.

Although "[l]eave to amend a complaint shall be freely given when justice so requires," Fed.R.Civ.P. 15(a)(2), such broad, open-ended, contingent requests are not looked upon with favor. *See, e.g.*, *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 699 (6th Cir.2004) (noting "[t]his Court's disfavor of such a bare request in lieu of a properly filed motion for leave to amend"). *See also Fisher v. Kadant, Inc.*, 589 F.3d 505, 509–10 (1st Cir.2009) (cautioning against "allowing plaintiffs to hedge their bets by adding a cursory contingent request in an opposition to a motion to dismiss"); *Ricotta v. Finance America, LLC*, No. 06–cv–01502, 2007 WL 987854, at *5 n. 7 (D.Colo. Apr. 2, 2007) ("a perfunctory request for an opportunity to cure unspecified pleading defects in a response brief does not typically constitute a sufficiently specific request for leave to amend") (citing *Calderon v. Kansas Dep't of Social and Rehab. Svcs.*, 181 F.3d 1180, 1185–86 (10th Cir.1999)).

Plaintiff has not identified any part of his pleading that he seeks to amend, or explained how he proposes to amend it. In the absence of a motion for leave to amend, properly made under Rule 15(a), Plaintiff's request is denied. *See Gray v. Evercore Restructuring L.L.C.*, 544 F.3d 320, 327 (1st Cir.2008)

(plaintiff's statement in his opposition to motion to dismiss, that "in the event that the Court finds that the Amended Complaint fails to state a claim, Plaintiff requests leave to replead," "d[id] not constitute a motion to amend a complaint," and district court therefore had no obligation to perform a Rule 15(a) analysis).

## CONCLUSION

Defendants' motion to dismiss the complaint (Dkt.# 42) is granted in part and denied in part. All of plaintiff's claims, with the exception of Plaintiff's due process claim against Defendant Wenderlich based on inadequate notice of the administrative segregation hearing, are dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        July 27, 2011.